**COGBURN LAW OFFICES**
ANDREW L. REMPFER, ESQ.
Nevada State Bar No. 8628
alr@cogburnlaw.com
DAVID L. LANGHAIM, ESQ.
Nevada State Bar No. 12425
dlanghaim@cogburnlaw.com
RYAN H. DEVINE, ESQ.
Nevada Bar No.: 12953
rdevine@cogburnlaw.com
2879 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
(702) 384-3616
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| SALVADOR HERNANDEZ, an individual, and on behalf of all others similarly situated as referenced herein,<br><br>Plaintiffs,<br><br>vs.<br><br>BOYD GAMING CORPORATION, a Nevada corporation; DOES I through V, inclusive; and ROE corporations I through V, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT** |

Plaintiff SALVADOR HERNANDEZ, ("Plaintiff" or "Hernandez"), on behalf of himself and all others similarly situated, by and through his law firm of Cogburn Law Offices, hereby alleges and complains against BOYD GAMING CORPORATION, ("Boyd" or "Defendant") as follows:

### GENERAL ALLEGATIONS

1. Plaintiff, and all others similarly situated, are or formerly were, non-exempt employees, generally employed by Boyd.

2. Boyd has had a policy, program, scheme and/or practice for years that automatically and intentionally rounds-down its non-exempt employee's working hours to the lowest quarter hour. Boyd's practice exclusively benefits and enriches Boyd to its employees'

COGBURN LAW OFFICES
2879 St. Rose Pkwy., Suite 200
Henderson, Nevada 89052
(702) 384-3616  FAX: (702) 943-1936

detriment by resulting in the potential loss of tens (and possibly hundreds) of millions of dollars from employees' wages.

3. Plaintiff files this suit to expose Boyd's illegal wage-and-hour practices to recoup the wages he is owed, as well as to recoup the wages owed to thousands of current and former Boyd employees who suffered under Boyd's illegal wage-and-hour practices.

4. In fact, several other employees have claims pending against Boyd for similar accusations.

5. Therefore, viewed as a whole, Plaintiff's complaints below form a larger complaint, expressed by current and former employees, that Boyd's illegal wage-and-hour practices, policies, and/or schemes have occurred nationwide at Boyd's 22 wholly-owned gaming entertainment properties, have affected different job duties, titles and classifications, and are in fact demonstrated by Boyd's internal corporate payroll records.

## THE PARTIES

6. Boyd is a Nevada corporation that, at all times relevant, performed business in the states of Illinois, Indiana, Iowa, Kansas, Louisiana, Mississippi, New Jersey and Nevada.

7. Boyd operates 22 wholly owned gaming entertainment properties.

8. Hernandez is, and was at all times relevant, a resident of Clark County, Nevada.

9. Plaintiff Hernandez brings these claims individually and on behalf of all non-exempt employees subject to Boyd's time-and-attendance practices.

10. Plaintiff alleges for himself, and others similarly situated, Boyd maintained a uniform corporate policy, program and/or scheme that automatically and intentionally deprived employees overtime by "rounding down" their hours to the lowest quarter hour.

11. At all times herein, Boyd was Plaintiff's "employer" and thus subject to the FLSA.

12. Boyd's practices violated and continues to violate the FLSA. The collective action claims are for overtime compensation, liquidated damages, and/or interest, and attorneys' fees and costs, under the FLSA, 29 U.S.C. §§ 207 and 216(b).

13. Boyd willfully committed, ordered, directed, supervised, allowed, planned, ratified, concealed, organized, or otherwise participated in the unlawful acts complained of.

## PARTIES

14. Boyd employed Hernandez, generally, as a "banquet bartender" in Clark County, Nevada at its Orleans property.

15. Hernandez worked uncompensated overtime in Boyd's employ.

16. Hernandez, and all others similarly situated, were not compensated for their time described below.

17. By filing this Complaint, the named Plaintiff consents to sue with respect to each FLSA claim for relief against Boyd pursuant to § 216(b) of the FLSA and hereby seek relief under that provision. Attached as "**Exhibit 1**" is Plaintiff's consent to sue.

18. Hundreds of other similarly situated non-exempt employees may elect to join this collective action if given proper notice of the pendency of the action and an opportunity to participate by "opting in". Consents to Sue on behalf of additional FLSA Collective Members may be filed as this litigation progresses.

19. Boyd is, and at all relevant times was, a Nevada corporation conducting business in the State of Nevada and Clark County, Nevada, with its principal place of business in Clark County, Nevada.

20. The true names and capacities whether individual, corporate, associate or otherwise of Defendants named herein as DOES I through V, inclusive, and ROE CORPORATIONS I through V, inclusive are unknown to Plaintiff. Said DOE and ROE Defendants are responsible for damages suffered by Plaintiff. Therefore, Plaintiff sues said Defendants by such fictitious names. Plaintiff will ask leave to amend this Complaint to show the true names and capacities of each DOE and ROE Defendants at such time as the same has been ascertained.

## BOYD'S AUTOMATIC ROUNDING-DOWN OF EMPLOYEES' TIME

21. Plaintiff, and others similarly situated, was subject to Boyd's time-and-attendance policies, practices and/or schemes that violated the state and federal wage laws, as alleged below.

22. As a condition of employment, Boyd had a policy, practice and/or procedure that required Plaintiff, and other non-exempt employees in its employ, to clock-in between the ":53" and ":00" mark and clock-out no later than ":07". Plaintiff's shifts began and ended at the ":00" mark, however.

23. Plaintiff, and all others similarly situated, was not compensated for time between the period he clocked in and the time he 'officially' began his shift, but was nonetheless working during that time.

24. Likewise, Plaintiff, and all others similarly situated, were not compensated for time after the 'official' end of his shift at ":00", but were nonetheless continuously performing work after their shift, and even past the official clock-out reflected in Boyd's "Punch Detail Reports".

25. Boyd's documents labeled "Punch Detail Reports" shows Boyd instead rounds all time down to the lower quarter hour, resulting in the deprivation of, up to 7 minutes of pre-shift clock-in time for Plaintiff, and others similarly situated. As for post-shift, pre-clock-out time, Boyd's policy eliminates up to 7 minutes of time, in addition to the "off-the-clock" work Plaintiff was required to perform discussed above.

26. Upon information and belief, Boyd's time-and-attendance policies were based on a common practice, policy and/or scheme that resulted in all non-exempt employees, across all 22 of its gaming properties, being forced to work off-the-clock up to 14 minutes per shift, which is documented in the "Punch Detail Reports".

27. Upon information and belief, Boyd employs anywhere from 10,000 to 15,000 employees who are non-exempt from overtime.

28. Boyd's violations of the FLSA were intentional because several employees had or have come forward to complain about these off-the-clock practices many times over the years and Boyd has failed to remedy the violations.

29. Some employees were told by managers they would be terminated for any complaints about being forced to work off-the-clock and/or not receiving the overtime and regular wages owed them.

30. This problem – working off-the-clock – has and still occurs at all of Boyd's properties and, upon information and belief, is part of a company-wide practice to deter overtime and thus decrease all of its exempt employees' compensation throughout the United States.

31. Boyd was, and is, aware of the problem but has failed to take any steps to voluntarily remediate the issue by compensating Plaintiff and all others similarly situated.

## THE POTENTIAL CLASS CLAIMANTS

32. Based on the preceding, Plaintiff believes the class is defined as follows: All hourly non-exempt workers employed by Boyd at anytime during the three years prior to the filing of this Complaint until the date of judgment after trial (herein "the Class Period").

33. The Class is subdivided into two subclasses of similarly situated and typical individuals (collectively, the "Subclasses" or "Subclass members"):

   a. **The "Rounded" Class:** Boyd has a policy or practice of "rounding" the hours off employees' time clocked-in down to the nearest quarter hour. Employees' shifts begin and end at the top of an hour. Employees are required to clock-in no earlier than seven (7) minutes prior to the start of their shift and clock-out no later than seven (7) minutes after their scheduled shift, irrespective of whether they have finished their job-related tasks necessary to finish their day. Boyd uses a rounding system that always rounds the minutes down to Boyd's favor, thereby the employee is not compensated for time on the clock.

   b. **The Wages Due and Owing Subclass**: All current and former employees of Boyd who, at any time during the Class Period, were terminated or otherwise separated from employment (collectively "Wages Due and Owing Subclass Members").

34. Boyd's conduct was intentional, purposefully designed to deprive Plaintiff, and all others similarly situated, from regular, and/or minimum and overtime wages owed.

35. Questions of law and fact common to the FLSA Collective Members as a whole include, but are not limited to, the following:

a. Whether Boyd unlawfully failed and continues to fail to pay regular wages, and/or minimum and overtime wages, in violation of the FLSA;

b. Whether Boyd's failure to pay overtime to its non-exempt FLSA Plaintiff, and Collective Members, was willful within the meaning of the FLSA;

c. Whether Boyd failed and continues to fail to maintain accurate records of actual time worked by Plaintiff and prospective FLSA Collective Members;

d. Whether Boyd failed and continues to fail to maintain accurate records of actual time worked by the Plaintiff and prospective FLSA Collective Members;

e. Whether Boyd failed and continues to fail to provide accurate wage statements itemizing all actual time worked and wages earned by Plaintiff and prospective FLSA Collective Members;

f. Whether Boyd's time-and-attendance policy discussed in paragraph 24, above, is, as apparently shown by Plaintiff's "Boyd Punch Detail Reports", a company-wide policy, practice and/or procedure that affects all non-exempt employees who have had their time automatically rounded-down by Boyd.

36. Plaintiff and FLSA Collective Members are similarly situated, have substantially similar job requirements, and pay provisions, and are subject to Boyd's common practice, policy or plan of refusing to pay overtime in violation of the FLSA and/or requiring employees to work-off-the-clock and are subject to Boyd's time-and-attendance policies regarding clock-in and clock-out that deprived all Plaintiff, and others similarly situated time worked.

37. Plaintiff's Claims for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to § 216(b) of the FLSA, for all claims asserted by the Plaintiffs and the FLSA Collective Members (FLSA claims) because Plaintiff's claims are similar to the claims of the members of the prospective FLSA Collective Members.

38. While the exact number of FLSA Collective Members is unknown to Plaintiff at the present, based on information and belief, there are more than 5,000 such members. Thus, a collective action is the most efficient mechanism for resolution of the FLSA Collective Members' claims.

39. The FLSA Collective Members, on behalf of whom Plaintiff brings this "opt-in" action, are similarly situated because they have been or are employed in similar positions and were subject to the similar unlawful practices as the individually-named Plaintiff. The number and identity of other Plaintiff yet to opt-in and consent to be a Plaintiff may be determined from Boyd's records and potential Plaintiff may be notified of the pendency of this action utilizing the Boyd's payroll records.

40. At all times during the FLSA Collective Period, all of the FLSA Collective Members were employed in the same or similar job as the Plaintiff and were paid in the same manner and under the same standard employment procedures and practices as Plaintiff.

41. During the FLSA Collective Period, Boyd was fully aware that Plaintiff and FLSA Collective Members were working uncompensated wages, including overtime and minimum wages.

42. Boyd's violations of the FLSA, § 207, were repeated, intentional and willful.

43. The Plaintiff and FLSA Collective Members have been damaged by Boyd's FLSA §207 violations.

44. Pursuant to §§ 207(a) and 216(b), Boyd is liable to the Plaintiff and the FLSA Collective Members for the full amount of all their unpaid wages, including overtime, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs of the Plaintiff and FLSA Collective Members who affirmatively "opt-in" to this collective action.

45. In addition, an action under § 216(b) is superior to other available methods for the fair and efficient adjudication of this controversy since the damages suffered by the individual members of the FLSA Collective Action may be relatively small, and the expense and burden of the individual redress would make it impossible for such FLSA Collective Members to individually redress the harms.

46. Moreover, because of the similarity of the FLSA Collective Members' claims, individual actions would present the risk of inconsistent adjudications, subjecting both employees and Boyd to incomparable standards of conduct.

47. Plaintiff is currently unaware of the identities of all the FLSA Collective Members. Accordingly, Boyd should be required to provide Plaintiff a list of all persons, inclusive of phone numbers and addresses of all persons employed by Boyd since January 2009 that were non-exempt employees subject to Boyd's time-and-attendance policies requiring them to clock in and out at the intervals stated above but nonetheless required to continue to perform off-the-clock work for which they did not receive overtime compensation. That would allow FLSA Collective Members notice of the pendency of this action and an opportunity to make an informed decision about whether to participate in it.

### FIRST CLAIM FOR RELIEF
(Violation of the Fair Labor Standards Act – Wages on Behalf of the Plaintiffs, *And All Others Similarly Situated In The Rounded Subclass*)

48. Plaintiff repeats and realleges and incorporates by reference the allegations set forth above as though fully stated herein.

49. The Plaintiff consents to sue in this action pursuant to § 216(b) of the FLSA. Additional potential FLSA Collective Members may execute and file forms consenting to "opt-in" and joining as Plaintiffs in this collective action.

50. This claim arises from Boyd's violation of the FLSA, 29 U.S.C. § 201, et seq., for its failure to pay wages, regular and/or overtime wages, to Plaintiff and all others similarly situated for all time worked, including time worked in excess of forty (40) hours in individual work weeks.

51. At all times material hereto, Plaintiff was employed by Boyd as an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

52. The Rounded Class subclass were all subject to Boyd's time-and-attendance policy, practice and/or scheme requiring them to clock-in between ":53" and ":00" and clock-out no later than ":07" for their shifts.

53. Their shifts began and ended at the ":00" mark, however.

54. Plaintiff, and all others similarly situated, was not compensated for time between the period he clocked in and the time he 'officially' began his shift, but was nonetheless required

as a condition of employment to at least be present and clock-in before his shift actually began at the ":00" mark.

55. Likewise, Plaintiff, and all others similarly situated, was not compensated for time after the 'official' end of their shift at ":00", but was nonetheless continuously performing work after his shift, and even past the official clock-out reflected in Boyd's "Punch Detail Reports".

56. Boyd has a policy, program and/or scheme – across its 22 wholly-owned properties in 8 states – as reflected in documents called "Punch Detail Reports" – that, upon information and belief, automatically round-down employees' pre-shift clock-in and post-shift clock-out time; *i.e.*, Boyd does not round-up the time to the nearest quarter hour.

57. Boyd instead automatically rounds all time down to the lower quarter hour, resulting in the deprivation of, up to, 7 minutes of pre-shift clock-in time for Plaintiff, and others similarly situated. As for post-shift, pre-clock-out time, Boyd's policy eliminates up to 7 minutes of time, in addition to the "off-the-clock" work Plaintiff was required to perform discussed above.

58. Plaintiff, and all others similarly situated, was subject to a company-wide policy that purposefully, or alternatively negligently, deprived them regular, and/or minimum and overtime wages regarding the work performed that benefited Boyd but Boyd automatically rounded down and eliminated from Plaintiff, and all others' similarly situated, regular and/or overtime wages.

59. On average, and upon information and belief, Plaintiff, and all others similarly situated, worked 10.5 minutes overtime, per day that Boyd failed to pay for the past three years.

60. Upon information and belief, this practice – automatically rounding down to the lowest quarter hour – eliminates hundreds of thousands of minutes from Boyd's employees' time per year.

61. As a result of eliminating this time, Boyd has effectively "saved" tens of millions – and possibly hundreds of millions – of dollars in employee wages, which Boyd has kept for itself to the detriment of its employees.

62. Boyd did not compensate Plaintiff, and those similarly situated, their regular wages and/or overtime wages at a rate of one-and-a-half times their regularly hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks, as required by the FLSA.

63. Boyd's refusal and failure to pay lawful regular wages, including overtime wages, to Plaintiff and those similarly situated for all time worked in excess of forty (40) hours per week violated 29 U.S.C. § 207. Plaintiff attaches a proposed 216(b) joinder notice for all others similarly situated. Attached as "**Exhibit 2**" is the proposed joinder.

64. Boyd acted willfully in violating the FLSA.

65. Per the FLSA, Plaintiff, and those similarly situated, seek all available damages including but not limited to wages, liquidated damages, attorneys' fees, punitive damages and costs.

66. The named Plaintiff, on his behalf and for all others similarly situated who consent in writing to join this action seek, on this First Claim for Relief, a judgment for unpaid regular, overtime wages, and/or unpaid minimum wages (if any), and additional liquidated damages of 100% of any unpaid regular, minimum (if any), and/or overtime wages, with such sums to be determined on an accounting of the hours worked by, and wages actually paid to, the named Plaintiff and any such other person who consent to join this action.

67. The Plaintiff also seeks an award of attorneys' fees, interest and costs as provided for by the FLSA, as well as punitive damages if viable.

### SECOND CLAIM FOR RELIEF
(Failure to Pay Regular And/Or Overtime Wages in Violation of N.R.S. § 608.010 et. seq. for All Subclasses Located in Nevada)

68. Plaintiff repeats and realleges and incorporates by reference the allegations set forth above as though fully stated herein.

69. All Nevada-based Plaintiffs, in all subclasses, are equally entitled their regular wages and/or overtime pursuant to Nevada's Wage-and-Hour Laws (NVWH).

70. N.R.S. § 608.016 states an "employee shall pay to the employee wages for each hour the employee works."

71. N.R.S. § 608.018, which applies to Boyd's business, states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wage.

72. By failing to pay all Nevada-based Plaintiffs, and all others similarly situated in all subclasses, Boyd violated N.R.S. §§ 608.016 and 608.018.

73. Boyd's violations of NVWH were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

74. Pursuant to N.R.S. § 608.260, Plaintiff requests an order requiring Boyd to make restitution of all lawful wages due to Plaintiff, and all others similarly situated, in an amount to be proved at trial.

75. Boyd's actions discussed above were willfully, oppressive, fraudulent and malicious, entitling Plaintiff, and all others similarly situated, punitive damages.

76. Further, Plaintiff seeks all available damages, fees and costs, under N.R.S. § 608.005, *et. seq.* including but not limited to damages for violations of N.R.S. §§ 608.020, or 608.030 and giving Plaintiff claims against Boyd under N.R.S. § 608.040.

### THIRD CLAIM FOR RELIEF
**(Failure to Timely Pay All Wages Due and Owing Upon Termination In Violation of N.R.S. § 608.020 For Wages Due and Owing Subclass)**

77. Plaintiff repeats and realleges and incorporates by reference the allegations set forth above as though fully stated herein.

78. All Nevada-based Plaintiffs, in all subclasses, are equally entitled their regular wages and/or overtime pursuant to Nevada's Wage-and-Hour Laws (NVWH).

79. N.R.S. § 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

80. N.R.S. § 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an

employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

81. N.R.S. § 608.050 grants an "employee lien" to each terminated or laid-off employee for the purposes of collecting compensation owed to them for a period of up to 30 days.

82. Boyd has failed to pay Plaintiff, and all members of the subclasses who are Nevada-based employees, these wages due and owing.

83. Because Boyd has failed to timely remit these wages, all Nevada-based employees in all subclasses are owed.

84. Plaintiff, and all others similarly situated, are thus owed 30 days of wages pursuant to N.R.S. § 608.140 and 608.040. They are also owed an additional 30 days pursuant to N.R.S. § 608.1404 and 608.050.

85. Pursuant to N.R.S. § 608.260, Plaintiff requests an order requiring Boyd to make restitution of all lawful wages due to Plaintiff, and all others similarly situated, in an amount to be proved at trial.

86. Further, Plaintiff seeks all available damages, fees and costs, under N.R.S. § 608.005, *et. seq.* including but not limited to damages for violations of N.R.S. §§ 608.020, or 608.030 and giving Plaintiff claims against Boyd under N.R.S. § 608.040.

87. Boyd's actions discussed above were willfully, oppressive, fraudulent and malicious, entitling Plaintiff, and all others similarly situated, punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Boyd as follows:

1. Designation of this action as a collective action on behalf of the proposed FLSA Collective Members asserting FLSA claims and prompt issuance of the notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Opt-In action, apprizing them of the pendency of this action, and permitting them to timely assert FLSA claim in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and a tolling of the statute

of limitations on the FLSA Collective Action Members' claims until the FLSA Collective Members are provided with a reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

2. Designation of Plaintiff Hernandez as representative of the nationwide FLSA Collective Members;

3. A declaratory judgment that the practices complained of are unlawful under the FLSA, §§201 et. seq.;

4. An injunction against Boyd and its officers, agents, successors, employees, representatives and any and all other persons acting in concert with it, from engaging in each of the unlawful acts, policies, practices, etc., set forth herein;

5. An award of damages, including liquidated and exemplary damages and waiting time penalties and other statutory penalties;

6. Costs of this action, including reasonable attorneys' fees and expert fees;

7. Pre-Judgment and post-Judgment interest as provided by law;

8. Such other and further legal and equitable relief as this Court may deem necessary, just and proper

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff hereby Demands a Jury Trial.

Dated this 1 day of October 2013.                Respectfully Submitted By:



COGBURN LAW OFFICES

By: _____
ANDREW L. REMPFER, ESQ.
DAVID L. LANGHAIM, ESQ.
RYAN H. DEVINE, ESQ.
*Attorneys for Plaintiff*